**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **JAMES L. BLACK and,** ) | |
| **CATHLEEN J. BLACK** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **No. 2:17-cv-02638-SHM** |
| **v.** ) | |
| ) | |
| **BOSTON SCIENTIFIC CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**ORDER**

This action arises from injuries that Plaintiffs James L. Black ("Mr. Black") and his wife, Cathleen J. Black ("Ms. Black"), allegedly sustained because of Defendant Boston Scientific Corporation's defective product.

Before the Court are two motions. The first is Defendant's Motion to Dismiss, filed on September 8, 2017. (ECF No. 8; see also ECF No. 8-1.) Plaintiffs responded on November 30, 2017. (ECF No. 28.) Defendant replied on December 4, 2017.

The second is Plaintiffs' Motion for Leave to File First Amended Complaint ("Motion to Amend"), filed on March 2, 2018. (ECF No. 32.) Defendant responded on March 16, 2018. (ECF No. 34.) Plaintiffs replied on March 27, 2018. (ECF No. 37.)

For the reasons below, Plaintiffs' Motion to Amend is GRANTED IN PART and DENIED IN PART, and Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

In mid-2016, Mr. Black was diagnosed with post-prostatectomy stress incontinence. (ECF No. 1-2 at 11.)[1] His condition causes "unintentional loss of urine when pressure (stress) on the bladder increases suddenly, as in coughing, sneezing, running or heavy lifting." (Id.) Post-prostatectomy stress incontinence can also "involve difficulty in voiding and retention of urine." (Id.)

Seeking to help his condition, Mr. Black had Defendant's male transobturator sling (the "BSX sling"), a polypropylene mesh device, implanted around his urethra. (Id.) On June 2, 2016, Dr. Paul R. Eber implanted the BSX sling. (Id.)

The BSX sling did not improve Mr. Black's condition. Indeed, Mr. Black's condition worsened. On June 3, 2016, Mr. Black returned to Dr. Eber for "a post-surgical trial void (assessment of the ability of the bladder to empty)." (Id.) Mr. Black was unable to empty his bladder. (Id.) Dr. Eber inserted "a Foley catheter (a tube to drain urine from the bladder)." (Id.)

---

[1] Unless otherwise noted, all pin cites for record citations are to the "Page-ID" page number.

On June 6, 2016, Mr. Black returned to see Dr. Eber.  (Id. at 11-12.)  Mr. Black "had a bladder spasm," and the catheter was removed.  (Id. at 12.)  Dr. Eber told Mr. Black "to drink fluids at home and return if he was still unable to void." (Id.)

On June 7, 2016, Mr. Black returned to Dr. Eber.  (Id.)  He alleges he was "unable to void and in great discomfort."  (Id.) Dr. Eber inserted another catheter and removed it on June 13, 2016.  (Id.)

On June 15, 2016, Mr. Black again returned to Dr. Eber. (Id.)  Dr. Eber instructed Mr. Black to perform "intermittent self-catheterization . . . four times daily."  (Id.)  On June 17, 2016, Mr. Black returned to Dr. Eber because Mr. Black was "unable to get urine flowing from self-catheterization."  (Id.)

On July 1, 2016, Mr. Black returned to Dr. Eber.  Dr. Eber told Mr. Black that he was "having a very tough time postopera- tively" and that his urine looked infected.  (Id.)  When Mr. Black visited Dr. Eber the following week, Dr. Eber told Mr. Black that he "had as many problems as you could possibly have," "[was] completely incontinent," and that his urine was "still grossly infected appearing."  (Id.)  Mr. Black received oral an- tibiotics for what Dr. Eber described as "a highly resistant urinary tract infection."  (Id.)

On August 2, 2016, Dr. Eber performed "a cystoscopy (examination of the bladder and urethra with a lighted scope)" on Mr. Black. (Id.) "Upon getting to the area where the BSX sling had been placed, the access was blocked by some unknown material." (Id.) The same procedure was performed on August 5, 2016, but access to Mr. Black's bladder was again blocked by unknown material. (Id.)

On August 16, 2016, "the eroded, failed BSX sling, which had perforated [Mr.] Black's urethra, was surgically removed from [Mr.] Black by Dr. Charles Seacrest." (Id. at 13.) Plaintiffs allege that, as a result of the eroded BSX sling and the surgery, Mr. Black was hospitalized for several days. (Id.) They allege that "[t]he implantation of an artificial urinary sphincter was considered but ruled out because of the possibility of infection resulting from scar tissue caused by the eroded, failed BSX sling and the increased possibility of surgical removal of the artificial sphincter becoming necessary as a result of such infection." (Id.) Following the August 16, 2016 surgery, Mr. Black "is totally incontinent and unable to work." (Id.)

On July 31, 2017, Plaintiffs filed this complaint in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis. (Id.) Plaintiffs bring claims for negligence, strict liability, breach of express warranty, breach of implied

warranties, violation of the Tennessee Consumer Protection Act and Treble Damages, and Punitive Damages.  (Id. at 14-17.)  On September 1, 2017, Defendant filed a Notice of Removal to this Court.  (ECF No. 1.)

On September 8, 2017, Defendant filed the Motion to Dismiss (ECF No. 8.)

On March 2, 2018, Plaintiffs filed the Motion to Amend. (ECF No. 32.)  The Motion to Amend seeks to dismiss Plaintiffs' claim for violation of the Tennessee Consumer Protection Act and Treble Damages, and to add claims for *res ipsa loquitur* and loss of consortium.  (Id. at 169.)

## II.  JURISDICTION

Under 28 U.S.C. § 1332(a), this Court has original juris-diction of all civil actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs."  28 U.S.C. § 1332(a)(1).

Plaintiffs are citizens of Tennessee.  (ECF No. 1-2 at 10.) Defendant is a Delaware corporation with its principal place of business in Massachusetts.  (ECF No. 1 at 3.)  Plaintiffs seek, among other things, "compensatory damages in the amount of One Million Dollars ($1,000,000)."  (ECF No. 1-2 at 17.)  The par-ties are completely diverse, and the amount-in-controversy re-quirement is satisfied.

**III. CHOICE OF LAW**

In a diversity action, state substantive law governs.  See Brocklehurst v. PPG Indus., Inc., 123 F.3d 890, 894 (6th Cir. 1997) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).  Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a "choice of law" analysis sua sponte.  See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998); see Americoach Tours, Inc. v. Detroit Diesel Corp., No. 04-2016 B/V, 2005 WL 2335369, at *1 (W.D. Tenn. Sept. 23, 2005) ("Because the parties agree to the particular state law application, the court will apply Tennessee law and will not conduct a choice of law analysis sua sponte.").  Tennessee substantive law applies.

**IV.  STANDARD OF REVIEW**

**A. Federal Rule of Civil Procedure 12(b)(6)**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendants are liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).

Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and alteration omitted).

The Court is required to "accept all of [plaintiffs'] factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp., 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). The Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. See Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); see also Papasan v. Allain, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Rule 12(b)(6) "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste

judicial resources and result in unnecessary discovery." Glass-man, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Free-man & Herz, LLP, 601 F. Supp. 2d 991, 997 (W.D. Tenn. Mar. 10, 2009).

### B. Federal Rule of Civil Procedure 15(a)

Under Rule 15(a), leave to amend shall be freely granted when justice so requires. Although Rule 15(a) "provides that a court 'should freely give leave [to amend a complaint] when justice so requires,' the right to amend is not absolute or automatic." Tucker v. Middleburg-Legacy Place, 539 F.3d 545, 551 (6th Cir. 2008). A court may deny leave to amend a complaint when there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182 (1962).

## V.  ANALYSIS

### A.  Motion to Amend

Plaintiffs seek dismissal of their claim for violation of the Tennessee Consumer Protection Act. Plaintiffs' Motion on that claim is GRANTED and the claim is DISMISSED.

Plaintiffs move to amend their complaint under Rule 15(a) to add claims for *res ipsa loquitur* and loss of consortium. (See ECF No. 32.) Defendant contends that Plaintiffs' Motion to

8

Amend should be denied on two grounds: (1) Plaintiffs' *res ipsa loquitur* claim is futile because *res ipsa loquitur* is not a cause of action and (2) Plaintiffs' loss of consortium claim is futile because it fails to state a claim. (ECF No. 34 at 192.) Defendant also moves to strike a portion of Plaintiffs' proposed amended complaint. (Id. at 197.)

### 1. *Res Ipsa Loquitur* Claim

Defendant argues that the claim of *res ipsa loquitur* in Plaintiffs' proposed amended complaint is futile because *res ipsa loquitur* is not a cause of action in Tennessee. (ECF No. 34 at 193-94.)

*Res ipsa loquitur* allows "an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." Seavers v. Methodist Med. Ctr. of Oak Ridge, 9 S.W.3d 86, 91 (Tenn. 1999) (citations omitted). *Res ipsa* "is simply a rule of evidence"; "it is neither a cause of action nor a ground for recovery, nor an 'issue.'" Carrier Corp. v. Piper, 460 F. Supp. 2d 827, 849 (W.D. Tenn. 2006) (internal quotations and citations omitted). "Thus, 'to the extent that *res ipsa loquitur* is [pled] as a cause of action in the complaint, it must be DISMISSED.'" Id. at 849-50 (internal quotations omitted).

Plaintiff's Motion to Amend is DENIED insofar as it seeks to add a claim of *res ipsa loquitur*. Plaintiffs are not precluded from relying on the doctrine of *res ipsa loquitur* to support their negligence claim.

### 2. Loss of Consortium Claim

Defendant contends that the loss of consortium claim in Plaintiffs' proposed amended complaint is futile. (ECF No. 34 at 196.) Defendant contends that "loss of consortium claims are derivative claims." (Id.) It argues that, because "[Plaintiffs'] other claims are subject to dismissal," the loss of consortium claim must be dismissed. (Id.)

That argument is insufficient to establish futility. In their original complaint, Plaintiffs alleged claims for negligence, strict liability, and breach of warranty. Those claims are not dismissed.

Plaintiffs' Motion to Amend is GRANTED insofar as it seeks to add a claim for loss of consortium.

### 3. Motion to Strike

Defendant moves to strike an "inflammatory legal argument in the Introduction of [Plaintiffs'] proposed [a]mended [c]omplaint." (ECF No. 34 at 197.) The relevant paragraph of Plaintiffs' proposed amended complaint states:

> As of the date of this Amended Complaint, no discovery has been conducted. However, Plaintiffs believe that issues identified herein to be systematic and affect-

> ing many similarly situated individuals. As a result,
> it is likely that once the discovery process is under-
> way, the named Plaintiffs will seek leave to amend
> this Amended Complaint to add new factual allegations,
> new claims, including but not limited to, Rule 23
> claims, and/or new parties.

(ECF No. 32 at 172.)  Defendant contends that "[t]he unsupported suggestion of a 'systematic' issue, affecting many similar situated individuals provides an inaccurate and misleading depiction of the litigation at hand and [Defendant]."  (Id.)

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Striking a pleading "should be sparingly used by the courts" because "it is a drastic remedy."  Brown & Williamson Tobacco Corp. v. United States, 201 F.2d 819, 822 (6th Cir. 1953).  A motion to strike "should be granted only when 'the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party.'"  E.E.O.C. v. FPM Grp., Ltd., 657 F.Supp.2d 957, 965–66 (E.D. Tenn. 2009) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 at p. 650 (2nd ed. 1990)); see also Hughes v. Lavender, 2:10-CV-674, 2011 WL 2945843, at *2 (S.D. Ohio July 20, 2011) ("Courts generally

strike parts of a pleading for being scandalous or impertinent only where the language is extreme or offensive.").

The introductory paragraph in Plaintiffs' proposed amended complaint is not redundant, immaterial, impertinent, or scandalous.  That paragraph simply states that Plaintiffs may, in the future, move to amend their complaint.  Before amendments are allowed, the Court must grant leave to amend under Rule 15.  Defendant has not demonstrated that the paragraph is "obviously false and clearly injurious to a party."  Hughes, 2011 WL 2945843, at *2.  Defendant's Motion to Strike is DENIED.

### B.    Motion to Dismiss

Plaintiffs' proposed amended complaint restates claims for negligence, strict liability, breach of warranty, and punitive damages that were raised in Plaintiffs' original complaint. (Compare ECF No. 1-2 at 14-17 with ECF No. 32 at 176-80.)  Defendants filed a motion to dismiss the claims in Plaintiffs' original complaint on September 8, 2017.  (ECF No. 8; see also ECF No. 8-1.)  Plaintiffs responded on November 30, 2017.  (ECF No. 28.)  Defendant replied on December 4, 2017.

In the interest of judicial economy, and to avoid addressing a second motion to dismiss, the Court will consider Defendant's Motion to Dismiss.

### 1. Statute of Limitations

The parties dispute whether Plaintiffs' claims for negligence, strict liability, and breach of warranty are time-barred. In Tennessee, the statute of limitations for personal injury cases is one year "after the cause of action accrue[s]." Tenn. Code. Ann. (a)(1). The statute of limitations begins to run "when the [plaintiffs are] 'aware of the facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct,' and the [plaintiffs know] the identity of the person who engaged in the conduct." McIntosh v. Blanton, 164 S.W.3d 584, 586 (Tenn. Ct. App. 2004) (quoting Roe v. Jefferson, 875 S.W.2d 653, 656-57 (Tenn. 1994)); see Shadrick v. Coker, 963 S.W.2d 726, 734 (Tenn. 1998) (holding that the statute of limitations begins to run when plaintiffs have "not only an awareness of the injury," but also knowledge of "the tortious origin or wrongful nature of that injury").

The law recognizes two kinds of knowledge: actual knowledge and constructive knowledge. "[A] plaintiff has actual knowledge of an injury where there has been an expert opinion given of such injury, i.e. where the defendant admitted [to committing the injury], or another expert opined that there was [an injury]." Matz v. Quest Diagnostics Clinical Laboratories, Inc., No. E2003-00167-COA-R3-CV, 2003 WL 22409452, at *3 (Tenn. Ct. App. 2003). A plaintiff has constructive knowledge when he be-

13

comes aware, or should have become aware, "of facts sufficient to put a reasonable person on notice that an injury has been sustained as a result of defendant's negligent or wrongful conduct." Lane-Detman, L.L.C. v. Miller & Martin, 82 S.W.3d 284, 295 (Tenn. Ct. App. 2002).

Defendant argues that the claims in Plaintiffs' July 31, 2017 Complaint are time-barred because "Plaintiffs should have . . . known [they] sustained injuries on or around July 8, 2016." (ECF No. 8-1 at 52.)  Defendant contends that, because Mr. Black began experiencing complications the day after surgery, and because he "sought follow up care for complications . . . seven times," "[i]t exceeds the bounds of judicial experience and common sense that Plaintiffs in reasonable diligence would not have discovered Mr. Black's injury during the days following his male sling surgery based on Mr. Black's immediate and ongoing medical care."  (ECF No. 8-1 at 52.)

Even assuming that Plaintiffs knew of Mr. Black's injury as early as June 3, 2016,[2] Defendant fails to demonstrate that Plaintiffs knew "the tortious origin or wrongful nature of that injury" before August 2, 2016, when Mr. Black's doctor performed

_____

[2] Although Defendant argues that Plaintiffs should have known of Mr. Black's injury in the days after his surgery, Defendant later contends that "there is no way to tell whether Mr. Black's harm was caused by [] natural complications flowing from his initial (pre-implant) incontinence that led to the June 2, 2016 implant."  (ECF No. 8-1 at 44.)  It would not be unreasonable for Plaintiffs to have assumed that Mr. Black's inability to void after his surgery resulted from his post-prostatectomy stress incontinence, rather than issues with the surgery.

a cystoscopy and found that access to the area where the BSX sling had been placed was blocked.  Shadrick, 963 S.W.2d at 734.

The complaint alleges that, on June 3, 2016, after Mr. Black's surgery, "a Foley catheter . . . was inserted."  (ECF No. 1-2 at 11.)  When Mr. Black returned to the doctor on June 6, 2016, "[h]e was instructed to drink fluids at home and return if he was still unable to void."  (Id. at 12.)  On June 15, 2016, Mr. Black "was instructed in intermittent self-catheterization to be performed four times daily."  (Id.)  In the following weeks, the doctor said that Mr. Black "[was] having a very tough time postoperatively," "that his urinalysis looked infected," that he "had as many problems as you could possibly have," and that his urine "showed staph epidermidis." (Id.)

The complaint does not allege that Plaintiffs were told that the reason for Mr. Black's complications was a defective medical device.  Mr. Black's doctor performed a cystoscopy on August 2, 2016.  (Id.)  It was only then, "[u]pon getting to the area where the BSX sling had been placed [and discovering] the access was blocked by some unknown material," that the doctor suspected the BSX sling was the cause of the injury.  (Id.)  On August 16, 2016, "the eroded, failed BSX sling . . . was surgically removed from [Mr.] Black."  (Id. at 13.)

Plaintiffs' allegations demonstrate that they did not have actual knowledge of the cause of their injuries until some time between August 2, 2016 -- the date of Mr. Black's first cystoscopy -- and August 16, 2016 -- the date Defendant's BSX sling was removed.

To the extent Defendant argues that Plaintiffs had constructive knowledge that Defendant was responsible for Plaintiffs' injuries, that argument is not well taken. "Whether Plaintiffs had constructive knowledge of [Defendant's] allegedly wrongful conduct . . . is an issue of fact" for a jury to determine. Fluri v. Fort Sanders Reg. Med. Ctr., No. E2005-00431-COA-R3-CV, 2005 WL 3038627 at *4 (Tenn. Ct. App. 2005) (collecting cases); accord Young ex rel. Young v. Kennedy, 429 S.W.3d 536, 557 (Tenn. Ct. App. 2013) (holding that judgment on the pleadings is appropriate only when "no reasonable trier of fact could conclude that a plaintiff did not know, or in the exercise of reasonable care and diligence should not have known, that he or she was injured as a result of the defendant's wrongful conduct"); Burk v. RHA/Sullivan, Inc., 220 S.W.3d 896, 900-01 (Tenn. Ct. App. 2006) ("Determining when a plaintiff acquired constructive knowledge of those elements is generally a question for the trier of fact."); Gosnell v. Ashland Chem., Inc., 674 S.W.2d 737, 739 (Tenn. Ct. App. 1984) ("Whether or not [the

plaintiff] exercised reasonable care and diligence . . . is a fact for a jury to determine").

Defendant relies on two cases for the proposition that, "contrary to Plaintiffs' contention, courts have not hesitated to dismiss claims based on the statute of limitations." (ECF No. 31 at 158.) Both cases are inapposite.

In Howard v. R.J. Reynolds Tobacco Co., No. 1:05CV-27, 2005 WL 2088909, at *5 (E.D. Tenn. Aug. 25, 2005), the court rejected plaintiff's argument that his cause of action for injuries caused by smoking did not accrue until he received a formal diagnosis of his condition. The court reasoned that, because plaintiff had "previously filed a lawsuit against [the defendant] in Wisconsin state court," he "had both sustained and become aware of his alleged injuries on or before" that suit. Id. at *4. Plaintiffs have not filed another lawsuit alleging injuries caused by Defendant. Thus, the reasoning of Howard does not apply.

In Parris v. Land, No. 53505-6, 1996 WL 455864, at *5 (Tenn. Ct. App., Aug. 16, 1996), the court rejected plaintiff's argument that her cause of action in a dental malpractice case did not accrue until she sought a second opinion about her condition from another doctor. Plaintiff alleged that, for more than fourteen months after the extraction of her wisdom teeth, her doctor "told her the numbness 'would eventually wear off,

and that she need not be concerned with it.'" Id. at *1. The court held that, "[e]ven accepting as true [the doctor's] statement to [plaintiff] that she should not be concerned . . . . in the exercise of reasonable care and diligence, [plaintiff] should have discovered her cause of action prior to April 30, 1992, (more than five months after the surgery)." Id. at *5.

Parris is distinguishable from this case on several grounds. Although the doctor in Parris told plaintiff that she need not be concerned about her numbness for one year, plaintiff "concede[d] that she began worrying that her condition was permanent . . . three to four months following the surgery . . . . Yet suit was not filed until over a year later." Id. In this case, Plaintiffs do not allege that they suspected any problems with Defendant's BSX sling until August 16, 2016, when the BSX sling was removed. Although the plaintiff in Parris argued that her cause of action did not begin to run until more than fourteen months after her injury, Plaintiffs contend that the statute of limitations began to run only two months after Mr. Black's injury. The latter is a more reasonable time for Mr. Black, "in the exercise of reasonable care and diligence," to have discovered the cause of his injury. Id. Parris does not help Defendant.

Viewing the evidence in the light most favorable to Plaintiffs and drawing all reasonable inferences in their favor, a

jury could find that Plaintiffs were unaware of the origin of
Mr. Black's injury until some time between August 2, 2016, and
August 16, 2016.  Plaintiffs filed their complaint on July 31,
2017.  (ECF No. 1-2 at 10.)  The claims in Plaintiffs' complaint
are timely because less than one year had passed since Plain-
tiffs' cause of action accrued.

### 2. Requirements of the Tennessee Products Liability Act

Defendant argues that Plaintiffs' claims of negligence,
strict liability, breach of express warranty, and breach of im-
plied warranties are futile given the Tennessee Products Liabil-
ity Act of 1978, Tenn. Code Ann. §§ 29-28-101, et seq. ("TPLA").
(ECF No. 8-1 at 38-43.)  Defendant contends that Plaintiffs
"fail[] to state any factual allegations identifying a specific
defect existed in the [Defendant's] male sling or how such al-
leged defect caused Plaintiffs' injuries."  (Id. at 39.)

The TPLA provides that: "A manufacturer or seller of a
product shall not be liable for any injury to a person or prop-
erty caused by the product unless the product is determined to
be in a defective condition or unreasonably dangerous at the
time it left the control of the manufacturer or seller."  Tenn.
Code Ann. § 29-28-105(a).  "[W]hether a plaintiff's claim
against a product manufacturer is couched in negligence, strict
liability, or breach of warranty, Tennessee courts have held

that the plaintiff must establish that the product was defective or unreasonably dangerous at the time the product left the control of the manufacturer." Stockton v. Ford Motor Co., 2017 WL 2021760, at *3 (Tenn. Ct. App. May 12, 2017) (collecting cases).

To establish a prima facie products liability claim under the TPLA, "the plaintiff must show: (1) the product was defective and/or unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer's control, and (3) the [plaintiffs'] injury was proximately caused by the defective product." Sigler v. Am. Honda Motor Co., 532 F.3d 469, 483 (6th Cir. 2008) (internal quotations marks omitted).

Under the TPLA, a product is "defective" if its condition "renders it unsafe for normal or anticipatable handling and consumption." Tenn. Code Ann. § 29-28-102(2). That a plaintiff allegedly suffered an injury caused by a product does not establish that the product was defective. See King v. Danek Med., Inc., 37 S.W.3d 429, 435 (Tenn. Ct. App. 2000) ("[T]he failure or malfunction of the device, without more, will not make the defendant liable."); Tatum v. Cordis Corp., 758 F. Supp. 457, 461 (M.D. Tenn. 1991) ("It is not enough to show that the product caused the plaintiff's injury or was involved in it."). A plaintiff "must show that there was something wrong with the product, and trace the plaintiff's injury to the specific defect." Id.

Defendant argues that Plaintiffs have not alleged a product defect.  Relying on <u>Frey v. Novartis Pharm. Corp.</u>, 642 F. Supp. 2d 787, 795 (S.D. Ohio 2009), Defendant argues that Plaintiffs' complaint does not "allege why the male sling was allegedly un-reasonably dangerous and/or in a defective condition."  (ECF No. 8-1 at 41.)

In <u>Frey</u>, plaintiffs alleged that "[t]he product which was consumed by Plaintiff[s] was defective in design and construc-tion at the time it left the Defendants' control" and "[a]s a direct and proximate result of the defect in manufacture or con-struction by Defendants, Plaintiff[s] [ ] suffered the injuries [ ] and damages set forth herein."  <u>Id.</u> at 790.  The court con-cluded that those allegations were insufficient to withstand a motion to dismiss because "[Plaintiffs] have failed to allege any facts that would permit the Court to conclude that a manu-facturing defect occurred and that the defect was the proximate cause of [Plaintiffs'] alleged injuries."  <u>Id.</u> at 795.

Unlike <u>Frey</u>, Plaintiffs here identify a specific product defect.  Plaintiffs allege that "Dr. Eber was [] unable to pass the cystoscope into the bladder because of necrotic-appearing (dead tissue) -- debris later determined after explanation to be eroded mesh fibers from the BSX Sling."  (ECF No. 32 at 175.) Plaintiffs also allege that when Defendant's BSX sling was re-moved from Mr. Black, it had "perforated [Mr.] Black's urethra."

(Id.)  They allege that those defects caused their injuries.

(Id. at 176.)  Plaintiffs' complaint alleges "specific problems

with the product," which "are more than sufficient to 'nudge

[their] claims across the line from conceivable to plausible.'"

Friedman v. Intervet Inc., No. 3:09-CV-2945, 2010 WL 2817257, at

*3, *4 (S.D. Ohio July 16, 2010) (quoting Twombly, 550 U.S. at

570).

Defendant also argues that Plaintiffs have failed to allege

that Plaintiffs' injury was proximately caused by Defendant's

product.[3]  (ECF No. 8-1 at 43-45.)  Defendant argues that:

> [B]ased on the facts as pled, there is no way to tell
> whether Mr. Black's harm was caused by (1) natural
> complications flowing from his initial (pre-implant)
> incontinence that led to the June 2, 2016 implant; (2)
> surgical complications unrelated to the male sling;
> (3) anatomical issues (4) natural complications flow-
> ing from unrelated co-morbidities or adverse health
> conditions; or (5) alleged problems associated with
> the male sling.

(Id. at 44.)

Defendant's argument overlooks the allegations in Plain-

tiffs' complaint.  Plaintiffs allege that their injuries were

caused by Defendant's "eroded, failed BSX Sling, which had per-

forated [Mr.] Black's urethra."  (ECF No. 1-2 at 13.)  Plain-

tiffs allege that the "eroded mesh fibers from the BSX Sling"

---

[3] Defendant does not dispute that Plaintiffs have adequately pled the second element of their prima facie case under the TPLA, that the defect existed at the time the product left the manufacturer's control.  Sigler, 532 F.3d at 483.  Plaintiffs' complaint alleges that, "[a]t the time the BSX Sling was implanted into [Mr.] Black, it was in the same condition in all relevant re-spects as when it left Defendant['s] [] control."  (ECF No. 1-2 at 11.)

caused their injuries. (Id. at 12.) Those allegations are "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. The allegations are sufficient to "adequately put Defendant on notice as to the legal claims that [Plaintiffs] seek to pursue and [plead] with specificity the product that failed, when it failed, and what harms were suffered as a result." Young v. Depuy Orthopaedics, Inc., No. 1:13-cv-30, 2012 WL 12030026, at *4 (E.D. Tenn. Dec. 23, 2013) (denying a defendant's motion to dismiss plaintiffs' TPLA claims when plaintiffs alleged that "a hip prosthesis implanted in 2002 [] spontaneously fractured in 2009" and "the fractured femoral stem of the prosthesis was the cause of [plaintiff's] injuries").

Plaintiffs allege that Defendant's product was defective, that the defect existed when the product left Defendant's control, and that Plaintiffs' injury was proximately caused by Defendant's defective product. (See generally ECF No. 32 at 172-80.) Plaintiffs have alleged a prima facie case of products liability under the TPLA. Defendant's Motion to Dismiss is DENIED insofar as it seeks to dismiss Plaintiffs' negligence, strict liability, and breach of warranty claims on that ground.

### 3. Breach of Express Warranty Claim

Defendant argues that Plaintiffs' breach of express warranty claim is futile. (ECF No. 8-1 at 45-46.) Defendant contends

23

that "Plaintiffs do not come anywhere close to alleging a specific warranty." (ECF No. 8-1 at 45.) Defendant argues that "Plaintiffs' allegations are devoid of *any facts* regarding where, when, how, or to who an express warranty was allegedly given or how any express warranty 'induced' Mr. Black to undergo the male sling implant procedure." (Id.)

"To establish a prima facie claim for breach of an express warranty, a plaintiff must prove that (1) the seller made an affirmation of fact intending to induce the buyer to purchase the goods; (2) the buyer was, in fact, induced by the seller's acts; and (3) the affirmation of fact was false regardless of the seller's knowledge of the falsity or intention to create a warranty." Smith v. TimberPro Inc., 2017 WL 943317, at *3 (Tenn. Ct. App. Mar. 9, 2017).

Defendant relies on Galloway v. Big G Express, Inc., No. 3:05-cv-545, 2008 WL 80262 (E.D. Tenn. Jan. 7, 2008). There, the court dismissed plaintiff's claim of breach of express warranty because plaintiff's complaint "fail[ed] to include any allegations of express warranties created by Defendant." Galloway, 2008 WL 80262, at *4.

Here, Plaintiffs' complaint alleges that, "[i]n its marketing of the BSX Sling, [Defendant] expressly warranted that the BSX Sling was safe and/or safer than other comparative methods of treatment for post-prostatectomy stress incontinence." (ECF

No. 1-2 at 15.)  Plaintiffs allege that Defendant breached that express warranty because "the BSX Sling constituted a serious danger of complications and side effects to the persons in whom the BSX Sling was implanted."  (Id.)

Under Tennessee law, "[a]ny description of the goods which is made a part of the basis of the bargain creates a warranty that the goods shall conform to the description."  Tenn. Code Ann. § 47-2-313(b).  Unlike Galloway, Plaintiffs allege that Defendant gave them an express warranty.  Plaintiffs have sufficiently alleged a breach-of-express-warranty claim.  Defendant's Motion to Dismiss is DENIED insofar as it seeks to dismiss that claim.

### 4.  Punitive Damages

Defendant contends that Plaintiffs' claim for punitive damages is futile.  Defendant argues that "Plaintiffs have not alleged any facts which show that [Defendant] acted, or failed to act, with the requisite state of mind."  (ECF No. 8-1 at 47.)

To the extent Plaintiffs allege punitive damages as a cause of action, that claim is dismissed.  "Punitive damages is not a cause of action."  Jimenez v. Vanderbilt Landscaping, LLC, No. 3-11-0276, 2011 WL 3027190, at *1 (M.D. Tenn. July 25, 2011).  Defendant's Motion to Dismiss is GRANTED insofar as it seeks to dismiss an independent claim for punitive damages.

Plaintiffs' complaint can also be construed to seek puni-
tive damages as a remedy.  To recover punitive damages in Ten-
nessee, Plaintiffs must show by clear and convincing evidence
that Defendant acted intentionally, fraudulently, maliciously,
or recklessly.  Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901
(Tenn. 1992); see also Rogers v. Louisville Land Co., 367 S.W.3d
196, 211 n.14 (Tenn. 2012) (noting that an award of punitive
damages is limited to "the most egregious cases" and is proper
only where there is clear and convincing proof that the defend-
ant has acted either "intentionally, fraudulently, maliciously,
or recklessly" under Hodges).  "A person acts recklessly when
the person is aware of, but consciously disregards, a substan-
tial and unjustifiable risk of such a nature that its disregard
constitutes a gross deviation from the standard of care that an
ordinary person would exercise under all the circumstances."
Id.

Plaintiffs allege that Defendant was "guilty of negligence
and disregard for safety in the design, manufacture, distribu-
tion and marketing of the BSX Sling."  (ECF No. 1-2 at 14.)
Plaintiffs allege that Defendant "[f]ail[ed] to conduct adequate
and appropriate testing of the BSX Sling."  (Id.)  Plaintiffs do
not allege that Defendant acted intentionally, fraudulently, ma-
liciously, or recklessly.  They do not allege that Defendant
knew or was aware of its defective product.  See Doe 1 ex rel.

Doe 1 v. Roman Catholic Diocese of Nashville, 154 S.W.3d 22, 38 (Tenn. 2005). Defendant's Motion to Dismiss is GRANTED insofar as it seeks to dismiss punitive damages as a remedy.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Amend is GRANTED IN PART and DENIED IN PART, and Defendant's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Plaintiffs' negligence, strict liability, breach of express warranty, breach of implied warranties, and loss of consortium claims survive. Plaintiffs' claims for violation of the Tennessee Consumer Protection Act, *res ipsa loquitur*, and punitive damages are dismissed.

So ordered this 16th day of July, 2018.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE